United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER L. SHKOLNIKOV, et al., | Case No.: 12-03996 JCS |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFFS' COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| JPMORGAN CHASE BANK, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiffs Alexander and Eugenia Shkolnikov ("Plaintiffs") brought this action against Defendants JPMorgan Chase Bank, N.A. and U.S. Bank, N.A.[1] (individually "Chase" and "U.S. Bank," collectively "Defendants") for wrongful foreclosure, negligence, restitution, violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Real Estate Settlement Procedures Act ("RESPA"), unfair competition in violation of the California Business and Professions Code ("UCL"), accounting, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.  Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss" or "Motion").  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  A hearing on the Motion was held on December 7, 2012 at 9:30 a.m.  For the reasons stated below, the Motion to Dismiss is GRANTED and the Plaintiffs' Complaint is dismissed with leave to amend.

---

[1] U.S. Bank is not identified in the Plaintiffs' Complaint.  Rather, the Complaint names U.S. Bank's predecessor in interest, Bank of America, N.A in its capacity as trustee for the WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust.  In Defendants' Notice of Motion and Motion to Dismiss, Defendant asserted Bank of America was improperly named because U.S. Bank has succeeded to Bank of America's interest as trustee.  In Plaintiffs' Opposition, they identify U.S. Bank as a defendant and replace all references to Bank of America with references to U.S. Bank.  In any amended complaint, Plaintiff shall correctly identify U.S. Bank as a defendant.

**II.     REQUESTS FOR JUDICIAL NOTICE**

Defendants request that the Court take judicial notice of eight documents.  Request for Judicial Notice in Support of Defendants' Motion to Dismiss ("RJN"), 2-3.  Plaintiffs object to each document.  In their Opposition, Plaintiffs request judicial notice of one document.  Plaintiffs' Opposition to Motion to Dismiss Complaint ("Opposition"), 6-7.  Defendants object.

First, Plaintiffs object to four documents from the court record of a complaint Plaintiffs filed against Defendants in the Superior Court of California for the County of San Mateo.  *Id.* at 11; RJN, Ex. 1-4.  Plaintiffs contend that the documents are irrelevant.  Opposition, 11.  Second, Plaintiffs object to each of the following:  (1) the 2006 Pooling and Servicing Agreement ("PSA") governing the WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust ("2006-AR19 Trust"), (2) the 2008 Purchase and Assumption Agreement ("P&A Agreement"), (3) the August 20, 2009 San Mateo County Recording of a Notice of Default ("NOD"), and (4) the January 1, 2010 San Mateo County Recording of a Notice of Trustee's Sale.  *Id.*  Plaintiffs argue that the validity and veracity of each document is under dispute, and that the documents contain inadmissible hearsay.  *Id.*  In turn, Defendants object to an undated printout of Deborah Brignac's LinkedIn profile because it is not capable of accurate and ready determination, not properly authenticated, irrelevant, and constitutes inadmissible hearsay.  Defendants Objections to Plaintiffs' Evidence Submitted in Support of Their Opposition to Defendants' Motion to Dismiss, 1; Opposition, Ex. A.

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  As a general rule, the court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  However, the court may consider unattached evidence on which the complaint "necessarily relies" if:  "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  party questions the authenticity of the document." *Id.* at 999 (citing *Marder v. Lopez*, 540 F.3d 445,

2  448 (9th Cir. 2006)).  In addition, the court may take judicial notice of "matters of public record," but

3  not facts that may be "subject to reasonable dispute." *Id.* (citing *Lee*, 250 F.3d at 689).

4        First, the Court takes judicial notice of the San Mateo County Superior Court documents

5  because they are a matter of the public record and they establish the procedural history of this case,

6  although the Court does not rely on those documents in deciding this Motion.  Second, the Court will

7  consider the PSA and the P&A Agreement because they are explicitly referenced in the Complaint,

8  they are central to Plaintiffs' claim, and Plaintiffs do not contest the authenticity of the documents

9  although they challenge their validity and veracity.  Moreover, the PSA and P&A Agreement are

10  matters of the public record.[2]  Third, the Court will consider of the NOD and Notice of Trustee Sale as

11  both are matters of public record and are relevant to Plaintiffs' loan and foreclosure process.  Finally,

12  the Court does not take judicial notice of Deborah Brignac's LinkedIn profile because its contents are

13  not capable of ready and accurate determination by resort to sources whose accuracy cannot

14  reasonably be questioned.

15  **III.     BACKGROUND**

16        **A.      The Complaint**

17        Plaintiffs allege that Defendants are not parties to their mortgage loan and have no ownership

18  interest entitling them to collect payment, declare a default, or initiate a foreclosure.  Complaint, ¶¶ 1,

19  75.[3]  On October 24, 2006, Plaintiffs obtained an adjustable rate mortgage on their property located at

20  2876 Adeline Drive, Burlingame, CA ("the Property") secured by a mortgage note ("Note") and a

21  Deed of Trust ("DOT").  *Id.* at ¶ 25 (citing Exs. A and B).  The California Reconveyance Company

22  ("CRC") was the trustee of the agreement, and Washington Mutual Bank, F.A. ("WaMu") was the

23  lender.  *Id.* at Exs. A and B.

24

25  _____

[2] The PSA was filed with the Securities and Exchange Commission and is available from that agency.  The P&A
26  Agreement was filed with the FDIC and is available from that agency.
[3] Plaintiffs' Complaint is incorrectly numbered.  Between paragraphs 29 and 30 there is a set of paragraphs numbered 1-
27  14.  The citations in this Order reflect the numbering in Plaintiffs' Complaint.  To the extent that the Court refers to the
second set of paragraphs numbered 1-14, the Court will list a parenthetical "(2)" following the paragraph number.  For
28  example, the second paragraph 1 will be listed as ¶ 1(2).

3

United States District Court
Northern District of California

1    WaMu entered the PSA governing the 2006-AR19 Trust and naming LaSalle Bank, N.A.

2  ("LaSalle") as trustee.  *Id.* at ¶ 28; RJN, Ex. 6.  Bank of America, N.A. ("Bank of America")

3  succeeded to LaSalle's interest by merger.  At some point thereafter, U.S. Bank became the trustee of

4  the 2006-AR19 Trust.

5    The PSA's closing date was December 1, 2006.  RJN, Ex. 6.  Plaintiffs allege that their

6  mortgage loan was not properly endorsed, transferred, accepted, and deposited to the trust prior to the

7  closing date.  Complaint, ¶ 34; RJN, Ex. 6.  Thus, Plaintiffs allege that the 2006-AR19 Trust never

8  obtained any beneficial interest in their mortgage loan.  Complaint, ¶ 34.  Moreover, Plaintiffs allege

9  that neither U.S. Bank, nor any of its predecessors in interest, ever acted as a trustee with any

10  authority over their loan.  *Id.*  Alternatively, Plaintiffs allege that because CRC was not named in any

11  capacity under the 2006-AR19 Trust, it lost all interest in their mortgage loan.  *Id.* at ¶ 29.

12    Plaintiffs also allege that WaMu attempted to securitize the mortgage loan in another

13  unidentified trust.  *Id.* at ¶ 32.  Further, Plaintiffs allege that WaMu's interest in their mortgage loan

14  was sold to an unidentified entity prior to WaMu's default.  *Id.* at ¶ 88.  In the alternative, Plaintiffs

15  allege that "the Trust that purportedly owns Plaintiffs' Note and Mortgage has been dissolved due to

16  the disbursement and receipt of insurance payouts to BofA… As a result if these payouts, BofA has

17  been paid in full on Plaintiffs' debt obligation."  *Id.* at ¶ 21.

18    WaMu failed on September 25, 2008, and thereafter entered the P&A Agreement with Chase

19  whereby Chase acquired the bulk of WaMu's assets.  *Id.* at ¶¶ 2(2)-3(2); RJN, Ex. 5.  Plaintiffs allege

20  that any mortgage loan that originated with WaMu that was not owed to or held by WaMu on

21  September 25, 2008, due to prior securitization or resale, did not pass to Chase.  *Id.* at ¶ 8(2).  Further,

22  Plaintiffs allege that Chase has never produced a schedule of the assets it purchased from WaMu that

23  contains Plaintiffs' mortgage loan or other proof of ownership.  *Id.* at ¶ 14(2).  Thus, Plaintiffs allege

24  that Chase has no interest in their mortgage loan.  *Id.* at ¶¶ 38, 49.  Alternatively, Plaintiffs point to an

25  affidavit filed in other litigation in which Plaintiffs quote Chase as stating, "Under the plain terms of

26  that agreement, [Chase] did not become [WaMu's] successor in interest.  Since its closure, the FDIC

27

28

4

as receiver has controlled [WaMu]." *Id*. at ¶ 10(2).  Plaintiffs do not provide the remainder of the affidavit or any other context.

Plaintiffs further challenge an Assignment of Deed of Trust, dated August 20, 2009, ("2009 Assignment") in which Chase purported to securitize Plaintiffs' mortgage loan in the 2006-AR19 Trust, of which Bank of America was then still acting as trustee. *Id*. at ¶¶ 35-36, 41.  Plaintiffs characterize the 2009 Assignment as an attempt to "paper over" alleged securitization defects.  *Id*. at ¶¶ 35-36, 41 (citing Ex. D).  Plaintiffs allege that the signer, Deborah Brignac ("Brignac"), lacked the corporate authority and personal knowledge to sign such documents. *Id*. at ¶¶ 41-42, 44.  Plaintiffs also allege that the assignment lacks consideration. *Id*. at ¶ 41.  Further, Plaintiffs allege that the 2009 Assignment was invalid or the trust to which the transfer was made no longer exists because the assignment inappropriately identified the "WaMu Mortgage Pass-Through Certificates Series 20006-AR19 Trust" instead of "WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust." *Id*. at ¶ 35.  Thus, Plaintiffs contend that U.S. Bank, Bank of America's successor in interest as the trustee of the 2009-AR19 Trust, never obtained any interest in their mortgage loan. *Id*. at ¶¶ 38, 49.

Further, Plaintiffs rely on California Commercial Code Section 3301 *et seq.* for the proposition that their mortgage loan can only be enforced by a holder in due course, an entity that can establish a pecuniary, legal, and equitable interest in the property and provide an unbroken chain of title to the Plaintiffs' note and mortgage. *Id*. at ¶ 51.  Plaintiffs state that they are willing and able to unconditionally tender their obligation pursuant to the mortgage loan when a holder in due course is identified. *Id*. at ¶ 68.

Based on the foregoing, Plaintiffs allege that Defendants fraudulently demanded and collected mortgage payments. *Id*. at ¶ 56.  Plaintiffs also allege that Defendants failed to properly credit payments made, incorrectly calculated interest, and failed to accurately debit fees. *Id*. at ¶ 57.  Plaintiffs state that, as a result of Defendants' conduct, they have suffered damage to their credit score, title to their home has been clouded preventing them from refinancing their loan or selling their home and subjecting them to financial jeopardy to multiple parties, and they have overpaid on their loan. *Id*. at ¶¶ 60-67.

United States District Court
Northern District of California

5

Plaintiffs assert the following eight causes of action in their Complaint:[4]

### (1) **Wrongful Foreclosure**

Plaintiffs allege that Defendants violated California Commercial Code Section 3301 when they initiated foreclosure without providing proof of unbroken chain of title to Plaintiffs' mortgage loan. *Id*. at ¶¶ 61-64.

### (2) **Declaratory Judgment**

Plaintiffs state that an actual controversy exists as to whether Defendants have any interest in their mortgage loan. *Id*. at ¶¶ 72, 74. Plaintiffs further allege that they will suffer prejudice if the Court does not determine the rights and obligations of the parties because they will be unable to identify their rightful creditors. *Id*. at ¶ 76. Thus, Plaintiffs seek a judicial declaration that Defendants have no interest in their mortgage loan. *Id*. at ¶ 75.

### (3) **Negligence**

Plaintiffs allege that Chase, as purported servicer, and U.S. Bank, as purported trustee of the security, owed them a duty of reasonable care "to refrain from taking any action against Plaintiffs that they do not have the legal authority to do." *Id*. at ¶¶ 81-82. Plaintiffs claim that Defendants breached that duty by failing to engage in proper transactional formalities and by attempting to collect on the mortgage loan absent legal authority. *Id*. at ¶¶ 82-83.

### (4) **Quasi-Contract**

Plaintiffs state that either or both defendants demanded monthly mortgage payments. *Id*. at ¶ 86. Plaintiffs further state that they tendered such payments and either or both defendants accepted them. *Id.* at ¶¶ 86-87. Because Plaintiffs allege the Defendants had no interest in the mortgage, Plaintiffs claim that these payments unjustly enriched Defendants and seek restitution. *Id*. at ¶ 89.

### (5) **Violation of RESPA, 12 U.S.C. § 2605** *et seq.*

Plaintiffs allege that, on August 30, 2011, they sent a demand letter to Chase and CRC challenging the then-pending foreclosure sale, the validity of Chase and CRC's interests, and setting

---

[4] Only claims two through eight are enumerated in the body of the Complaint. In the caption, Plaintiffs list additional claims for wrongful foreclosure and "violation of FCDA." The wrongful foreclosure claim is included here because Plaintiffs address that claim in their voluminous introduction section. The FCDA claim is not included because Plaintiffs failed to make any allegations to support that claim, failing to even identify the "FCDA."

1    out forty-three document requests.  *Id*. at ¶ 92 (citing Ex. E).  Plaintiffs allege that the demand letter

2    was a Qualified Written Request ("QWR") pursuant to RESPA because it contained sufficient

3    information to enable Chase to identify the loan in question and because it requested information

4    pertaining to the identity and contact information of the holder in due course of the mortgage note,

5    accumulated late fees and charges, and the validity of the purported debt.  *Id*. at ¶¶ 92, 94.  Plaintiffs

6    allege that Defendants violated RESPA by failing to make appropriate corrections to their account and

7    by furnishing adverse information to credit reporting agencies.  *Id*. at ¶ 96.  Plaintiffs claim pecuniary

8    loss based on over-calculation and overpayment of the interest on their loan, loss of credit, the costs of

9    repairing their credit rating, costs associated with removing the cloud on their property, and their

10   attorney's fees.  *Id*. at ¶ 97.

11          (6)  **Violation of FDCPA, 15 U.S.C. § 1692 *et seq*.**

12          Plaintiffs allege that Defendants falsely represented the status of the debt as being owed to

13   Defendants and attempted to collect on the debt in violation of FDCPA.  *Id*. at ¶ 101.

14          (7)  **Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq*.**

15          Plaintiffs contend that Defendants executed and recorded false and misleading documents

16   without legal authority, failed to disclose the principal for whom the documents were executed and

17   recorded, demanded and accepted payment for nonexistent debts, violated the "Security First Rule,"

18   reported payments as late to credit bureaus without the legal right or authority to do so, and acted as a

19   beneficiary without legal authority.  *Id*. at ¶ 107.  Plaintiffs allege that this conduct violated Cal. Pen.

20   Code Section 532f(a)(4) and 12 U.S.C. Section 2605.  *Id.* at ¶¶ 103-105.  Plaintiffs allege that this

21   conduct gave Defendants an unfair advantage over their competitors.  *Id*. at ¶ 111.  Plaintiffs allege

22   that they have suffered "substantial harm" as a result of Defendants' practices.  *Id*. at ¶ 112.

23   Specifically, Plaintiffs allege that title to their Property has been clouded.  *Id*. at ¶ 114.

24          (8)  **Accounting**

25          Plaintiffs state that Defendants created a fiduciary relation when they held themselves out as

26   Plaintiffs' creditor and mortgage servicer, respectively.  *Id.* at ¶ 117.  Thus, Plaintiffs allege that

27   Defendants owe them a duty to properly account for payments made by Plaintiffs.  *Id*.  Plaintiffs

28

1   further allege that all payments made to Defendants should be returned.  *Id*. at ¶ 118.  Plaintiffs allege

2   that they cannot ascertain the amount of money they paid to Defendants, and thus the amount they

3   claim is to be disgorged, without an accounting of the receipts and disbursements of those

4   transactions.  *Id*. at ¶ 119.

5       **B.      The Motion to Dismiss**

6           In seeking dismissal of the Plaintiffs' Complaint, Defendants outline their basis for claiming

7   an interest in Plaintiffs' mortgage loan.    Defendants state that the Plaintiffs' adjustable rate loan with

8   WaMu was secured by the DOT naming WaMu as the lender and beneficiary and CRC as the trustee.

9   Motion to Dismiss, 2 (citing Complaint, Exs. A and B).  The DOT provides that it may be sold one or

10  more times without notice to the borrower and contains a power of sale upon default.  *Id*. (citing

11  Complaint, Ex. B).

12          Defendants argue that whether or not WaMu placed the mortgage loan in the 2006-AR19

13  Trust, WaMu remained at least the loan's servicer pursuant to the terms of the PSA.  *Id*. (citing RJN,

14  Ex. 6).  As Servicer, Defendants argue that the PSA gave WaMu authority to collect all payments

15  owed under the mortgage loans, execute assignments related to the mortgage loans, and initiate

16  foreclosure proceedings upon default.  *Id*. (citing RJN, Ex. 6 ¶¶ 3.01, 3.09).

17          Defendants argue that, in 2008, Chase acquired WaMu's interest in Plaintiff's mortgage

18  pursuant to the P&A Agreement, which transferred WaMu's "mortgage servicing rights" to Chase.

19  *Id*. (citing RJN, Ex. 5).   Defendants state that Chase issued the 2009 Assignment to Bank of America

20  consistent with its authority laid out in the PSA.  *Id*. at 2-3 (citing RJN, Ex. 6 ¶ 3.01).  Moreover,

21  Defendants argue that Plaintiffs lack standing to challenge the propriety of any aspect of the transfer

22  of the loan to the securitized trust because Plaintiffs are not party to the PSA or intended third party

23  beneficiaries of the PSA.  *Id*. at 6 (citing *Armeni v. America's Wholesale Lender*, 2012 WL 253967, at

24  *2 (C.D. Cal. Jan. 25, 2012) (finding that the plaintiff lacked standing to challenge any breaches in the

25  PSA because he was not an investor or third party beneficiary to the trust); *Bascos v. Federal Home

26  Loan Mortg. Corp.*, 2011 WL 3157062, at *6 (C.D. Cal. July 22, 2011) (finding that the plaintiff

27

28

United States District Court
Northern District of California

8

lacked standing to challenge noncompliance with the terms of the securitization agreement because the plaintiff was not an investor of the loan trust)).

Defendants state that, on August 29 2009, CRC recorded a NOD on the Property for estimated arrears in the amount of $17,334.75. *Id*. at 3 (citing RJN, Ex. 7). Nothing being done to resolve the default, CRC issued and recorded a Notice of Trustee's Sale on January 11, 2010. *Id*. (citing RJN, Ex. 8). CRC recorded a second Notice of Trustee's Sale on February 16, 2011. *Id*. (citing Complaint, Ex. C).

Defendants argue that Plaintiffs lack standing to challenge the foreclosure proceedings because Plaintiffs have failed to allege they are currently willing and able to tender the entire amount due. *Id*. at 4 (citing *Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009)); *but see Chan Tang v. Bank of America, N.A.*, 2012 WL 960373, at *4-*5 (C.D. Cal. March 19, 2012) (declining to follow *Alicea* and refusing to apply the tender rule where the foreclosure sale was pending). Assuming Plaintiffs have standing, Defendants argue that they complied with California's nonjudicial foreclosure scheme as set forth in Civil Code Section 2924 *et seq*. *Id*. at 4-5 citing *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1154, 121 Cal.Rptr.3d 819 (2011) (Civil Code Section 2924 *et seq*. provides a comprehensive framework for the regulation of nonjudicial foreclosure sales)). They support this argument by asserting that CRC is, and always has been, the trustee named on the DOT and, for that reason, has statutory authority to initiate foreclosure. *Id*. at 5 (citing Cal. Civ. Code § 2924(a)(1)). Defendants contend that the trustee named under the PSA and the trustee named in the DOT each have distinct interests in the mortgage loan. *Id*. (citing RJN, Ex. 6 ¶ 8.01). Defendants further assert that the trustee under the DOT does not lose the power of sale upon securitization of the mortgage loan. *Id*. (citing *Benham v. Aurora Loan Associates*, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) ("[o]ther courts in this district have summarily rejected the argument that companies … lose their power of sale pursuant to a deed of trust when the original promissory note is assigned to a trust pool"); *Lane v. Vitek Real Estate Indus. Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010)).

Moreover, Defendants rebut Plaintiffs challenge to the foreclosure based on the theory that no party was a "holder in due course" of the Note pursuant to Commercial Code Section 3301. *Id*. at 7. Defendants argue that Civil Code Section 2924, not Commercial Code Section 3301, governs nonjudicial foreclosure sales and that Section does not require any party to possess a physical promissory note. *Id*. (citing *Sicairos v. NDEX West, LLC*, 2009 WL 385855, at *3 (S.D. Cal. Feb 13, 2009)).

Based on the above, Defendants argue that each of Plaintiffs' individually enumerated causes of action fail:

Declaratory Relief: Defendants state that declaratory relief is not a freestanding cause of action. *Id*. at 8 (citing *Team Enterprises, LLC v. W. Inv. Real Estate Trust*, 721 F.Supp.2d 898, 911 (E.D. Cal. 2010)). Defendants characterize Plaintiffs' request for declaratory relief as being premised on the notion that Defendants lack any interest in the mortgage loan. *Id*. at 8. Because Defendants contend that premise fails, Defendants further contend that there is no actual controversy to necessitate declaratory judgment. *Id*.

Negligence: Defendants argue that Plaintiffs negligence cause of action must be dismissed because loan servicers and lenders owe borrowers no duty of care unless they participated in the financed enterprise beyond the usual practices associated with the lending business. *Id*. at 8-9 (citing *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991) ("'[l]iability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender'"); *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141, 1153 (E.D. Cal. 2010)). Moreover, Defendants re-assert that they had legal authority to foreclose upon Plaintiffs' default. *Id*. at 9.

Quasi-Contract: Defendants contend that restitution in quasi-contract is inappropriate because Defendants were entitled to collect loan payments and foreclose on Plaintiffs' property in the event of default. *Id*.

RESPA: Defendants argue that Plaintiffs did not make a QWR for the purposes of RESPA because they did not request information relating to the servicing of their loan. *Id*. at 10 (citing 12

U.S.C. § 2605(e)(1)(A)).  Defendants characterize the purported QWR as a demand for cancellation of the trustee's sale and a demand for documents.  *Id*.  Defendants state that there is no reference to RESPA in the purported QWR.  *Id*. (citing *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1196 (E.D. Cal. 2010) (conclusory statement that certain correspondence is a QWR is insufficient)).  Further, Defendants argue that Plaintiffs made no factual allegations to support their belief that the servicing on their account was in error.  *Id*.  For these reasons, Defendants contend that they were not obligated to respond to Plaintiff's purported QWR.  *Id*. (citing *Derusseau v. Bank of Am., N.A.*, 2011 WL 5975821, at *4 (S.D. Cal. Nov. 29, 2011); *Gonzalez v. First Franklin Loan Servs.*, 2010 WL 144862, at *12 (E.D. Cal. Jan. 11, 2010)).  Alternatively, Defendants argue that any breach of RESPA did not cause actual damages to Plaintiffs because Plaintiffs' alleged injury was instead caused by their default on their loan.  *Id*. at 11 (citing 12 U.S.C. § 2605(f)(1)(A); *Hamilton v. Bank of Blue Valley*, 746 F.Supp.2d 1160, 1175 (E.D. Cal. 2010) ("Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages"); *Singh v. Wash. Mut. Bank*, 2009 WL 2588885, at *5 (N.D. Cal. Aug 19, 2009)).

FDCPA:  Defendants argue that the FDCPA claim fails because they are not debt-collectors within the meaning of FDCPA.  *Id*. (citing 15 U.S.C. § 1692a(6); *Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed. Appx. 363, 364-65 (7th Cir. 2007) (for the purposes of the FDCPA, debt collectors are third parties who attempt to recoup debts owed to creditors); *Lal v. Am. Loan Servicing, Inc.*, 680 F.Supp.2d 1218, 1224 (E.D. Cal. 2010) (mortgage servicing company is not a debt collector)).  Moreover, Defendants state that they did not make any false or deceptive statements in collecting payments owing under the loan.  *Id*.  Further, Defendants contend that foreclosure on a property pursuant to a deed of trust does not constitute debt collection pursuant to the FDCPA.  *Id*. at 12 (citing *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002)).

UCL:  Defendants contend that Plaintiffs' UCL claim is flawed because Plaintiffs failed to identify any predicate unlawful conduct.  *Id*. (citing *Berryman v. Merit Property Mgmt. Inc.*, 152 Cal.App.4th 1544, 1554, 62 Cal.Rptr.3d 177 (2007); *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505, 82 Cal.Rptr.2d 368 (1999)).  Defendants argue that Plaintiffs cannot establish any unlawful,

11

1    unfair, or deceptive conduct because Defendants had authority to collect payments, execute

2    assignments, and foreclose on the mortgage loan upon the Plaintiff's default.  *Id.* at 13 (citing *Spiegler*

3    *v. Home Depot U.S.A., Inc.*, 552 F.Supp.2d 1036, 1045-47 (C.D. Cal. 2008)).  In addition, Defendants

4    argue that plaintiffs have failed to establish a sufficient injury because they only allege a cloud on

5    their title in the section of their Complaint devoted to their UCL cause of action.  *Id.* (citing *Peterson*

6    *v. Cellco P'ship*, 164 Cal.App.4th 1584, 1590, 80 Cal.Rptr.3d 316 (2008)).

7        Accounting:  Defendants posit that accounting is a remedy, not an independent cause of

8    action.  *Id.* (citing *Batt v. City and County of San Francisco*, 155 Cal.App.4th 65, 82, 65 Cal.Rptr.3d

9    716 (2007)).  Moreover, Defendants argue that there is no fiduciary relationship between a lender,

10   mortgage servicer, beneficiary under a deed of trust, or foreclosure trustee on the one hand, and a

11   borrower on the other.  *Id.* at 13-14 (citing *Nymark*, 231 Cal.App.3d at 1093 n.1, 283 Cal.Rptr. 53).

12   As a result, Defendants contend, there is no basis for an accounting.  *Id.* at 14.  Finally, Defendants

13   state that calculating the amount due on a loan is not complicated, and would not require the judicial

14   oversight of an accounting remedy.  *Id.* (citing *Teselle v. McLoughlin*, 173 Cal.App.4th 156, 179, 92

15   Cal.Rptr.3d 696 (2009)).

16        **C.        The Opposition to the Motion to Dismiss**

17        In response, Plaintiffs supplement their attack on the 2009 Assignment by arguing that it could

18   not convey any interest to U.S. Bank because it took place after the 2006 closing established by the

19   PSA.  *Id.* at 15 (citing *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016, at *7 (E.D. Cal.

20   November 17, 2011) for the proposition that "Plaintiffs pleaded that Defendant recorded a fabricated

21   assignment of deed of trust well after the closing date of the mortgage backed security to which it was

22   allegedly sold, giving rise to the plausible inference that at least some part of the recorded assignment

23   was fabricated in violation of Cal. Pen. Code § 532f(a)(4) sufficient to support a UCL claim for the

24   purposes of summary judgment").

25        Plaintiffs also argue that CRC has no interest in their home mortgage because, although it was

26   named as trustee in the 2006 DOT, Plaintiffs allege that there is no evidence it continued in that

27   capacity after securitization of the loan.  *Id.* at 15.  Plaintiffs further posit that CRC was never

28

substituted as the trustee after securitization. *Id*. Finally, Plaintiffs argue that CRC lacks authority

because the 2009 Assignment was invalid or the trust no longer exists based on the typographical

error identified in the Complaint. *Id*.

Plaintiffs next attempt to distinguish *Gomes*, which Defendants cited for the proposition that

physical possession of a promissory note is not required to initiate a nonjudicial foreclosure, by

arguing that they identified a "specific factual basis" that the foreclosure was not initiated by the

correct party in their Complaint. *Id*. at 12-14 (citing *Tanburri v. Suntrust Mortg., Inc.*, 2011 WL

6294472, at *10 (N.D. Cal. Dec. 15, 2011) ("*Gomes* specifically avoided the scenario pled here, in

which 'the plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was

not initiated by the correct party"); *Gomes*, 192 Cal.App.4th at 1155-56, 121 Cal.Rptr.3d 819,

(distinguishing (1) *Weingartner v. Chase Home Finance, LLC*, 702 F.Supp.2d 1276 (D. Nev. 2010)

because, in part, the trustee that initiated the foreclosure was not in fact the trustee at the time; (2)

*Castro v. Executive Trustee Servs., LLC*, 2009 WL 438683 (D. Ariz. Feb. 23, 2009) because, in part,

documents indicated that Defendants may not have had the necessary rights under Arizona law; and

(3) *Ohlendorf v. Am. Home Mortg. Servicing*, 279 F.R.D. 575 (E.D. Cal. 2010) because, in part,

Plaintiff alleged that the wrong party initiated the foreclosure based on documents indicating that

assignments of the deed of trust had been improperly backdated and thus that the wrong party had

initiated foreclosure)).

Plaintiffs then supplement six of their individual causes of action:

Negligence:  Plaintiffs allege that Defendants' allegedly knowing and wrongful conduct in

collecting money and initiating foreclosure exceeded the activities of a conventional lender and thus

subjected Defendants to a duty of care. *Id*. at 19 (citing *Osei v. Countrywide Home Loans*, 692

F.Supp.2d 1240, 1249 ("a lender may owe a duty of care sounding in negligence to a borrower when

the lender's activities exceed those of a conventional lender")).

FDCPA:  Plaintiffs argue that U.S. Bank, as a trustee, is a debt collector for the purposes of

FDCPA because the principal purpose of its business as such is to collect Plaintiffs' debt for the

benefit of the trust's beneficiaries. *Id*. at 20 (citing 15 U.S.C. § 1692a(6)).  Because Plaintiffs allege

13

that U.S. Bank attempted to collect their debt without authority to do so, they claim that U.S. Bank violated FDCPA. *Id*. at 20-21 (citing 15 U.S.C. § 1692e(2)(A)(5)).

RESPA:  Plaintiffs argue that they indicated their belief that their account was in error because of Chase's deceptive servicing practices. *Id*. at 21 (citing 12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(1)(B)(ii)).  Plaintiffs allege that Chase violated RESPA because it did not acknowledge receipt of their purported QWR within five days of receipt or provide a substantive response within thirty days. *Id*. at 22.  Plaintiffs allege that they suffered pecuniary harms including over calculation and overpayment of interest on their loan, the costs associated with removing the cloud on their property title, and attorney's fees and costs. *Id*.

UCL:  Plaintiffs argue that they have suffered tangible injuries to their credit, that they have been unable to refinance or sell their home, and that title has been rendered unmarketable. *Id*. Plaintiffs further argue that, had they known the true identity of their creditor, they would have been able to make payments to their account instead of negotiating with the wrong entity. *Id*. at 22-23.

Accounting:  Plaintiffs assert that accounting is an independent cause of action. *Id*. at 24 (citing *Teselle*, 173 Cal.App.4th at 179, 92 Cal.Rptr.3d 696 ("[a] cause of action for accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by accounting")). Plaintiffs proceed to argue that Defendants held themselves out as their true creditors, creating a fiduciary relationship that is a sufficient basis for an accounting. *Id*. (citing *Chasnik v. BAC Home Loans Servicing LP*, No. CV 11-01324 (C.D. Cal. Oct. 26, 2011) (denying motion to dismiss on accounting claim because plaintiff alleged that defendants "held themselves out to be plaintiff's true creditor and mortgage servicer" and accepted loan payments to which they were not entitled for 36 months)).

Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing: Plaintiffs claim for the first time that they "have [s]ufficiently [a]lleged [c]laims for [b]oth [b]reach of [c]ontract and [b]reach of the [i]mplied [c]ovenant of [g]ood [f]aith and [f]air [d]ealing." *Id*. Plaintiffs' underlying argument, relying on factual allegations contained in the Complaint, is that,

14

even if Defendants did have an interest in their mortgage loan, Defendants failed to accurately credit those payments pursuant to the order of priority set forth in the DOT. *Id*. at 25; Complaint, ¶ 57. Plaintiffs claim that misapplication of funds and taxes breached both the contract and the implied covenant of good faith and fair dealing. Opposition, 25-26.

### D. The Reply

In their Reply, Defendants rebut Plaintiffs' attacks on the validity of their and CRC's interests. Defendants argue that the express terms of the P&A Agreement gave Chase all of WaMu's mortgage servicing rights, including the servicing rights to Plaintiffs' loan. Reply in Support of Defendants' Motion to Dismiss ("Reply"), 4 (citing *Lomely v. JPMorgan Chase Bank, N.A.*, 2012 WL 4123403. at *1 (N.D. Cal. Sept. 17, 2012) ("[p]ursuant to a purchase and assumption agreement … dated September 25, 2008, the FDIC transferred to Chase 'all right, title, and interest of the Receiver in and to all of the assets' of WaMu, including the Loan")).

Moreover, Defendants contend that the 2009 Assignment is valid because Brignac was an officer of Chase in 2009, and had the requisite authority and knowledge to execute the assignment. *Id*. at 5. Next, Defendants turn to Plaintiffs' allegation that the 2009 Assignment is invalid because it was executed after the closing date in the PSA. Defendants counter this argument by stating, first, that Plaintiffs have no standing to claim noncompliance with the PSA because they are not parties or third party beneficiaries of the PSA, and second, that *Vogan*, upon which Plaintiffs rely, is distinguishable because it involved a claim brought under California Penal Code Section 532f(a)(4). *Id*. at 5-6 (citing *Vogan*, 2011 WL 5826016, at *7). Finally, Defendants state that the typographical error in the 2009 Assignment does not invalidate it. *Id*. at 6.

Even if the 2009 Assignment is invalid, Defendants argue, there is no requirement that an Assignment of Deed of Trust be recorded for Defendants to initiate foreclosure. *Id*. at 5 (citing *Parcray v. Shea Mortg. Inc.*, 2010 WL 1659369, at *11 (E.D. Cal. April 23, 2010) ("[t]here is no requirement under California law for an assignment to be recorded in order for an assignee beneficiary to foreclose"); *Caballero v. Bank of Am.*, 2010 WL 4604031, at *3 (N.D. Cal. Nov. 4, 2010) ("§ 2932.5 does *not* require the recordation of an assignment of a beneficial interest for a *deed*

15

*of trust*, as opposed to a mortgage")).  As a result, Defendants contend, any defect in that instrument is immaterial.  *Id.*

Defendants contest Plaintiffs' attempt to distinguish *Gomes*.  *Id.* at 7.  Defendants argue that *Weingartner* and *Castro* are irrelevant because they do not apply California nonjudicial disclosure law.  *Id.*  Defendants then argue that *Ohlendorf* is distinguishable because in this case, unlike in *Ohlendorf*, the 2009 Assignment was recorded before the Notice of Default was recorded and did not appear inappropriately backdated.  *Id.* (citing *Ohlendorf*, 279 F.R.D. at 583).

Defendants then address CRC's authority to initiate a foreclosure.  First, Defendants state that CRC was never required to file a Substitution of Trustee because it was and always has been trustee of the 2006 DOT.  *Id.* at 6.  Second, Defendants argue that Plaintiffs' misconstrue CRC's power as arising from the PSA.  *Id.*  CRC's authority instead comes from the DOT.  *Id.*  Thus, Defendants contend, securitization and issues surrounding the 2009 Assignment have no bearing on CRC's authority.  *Id.*

Finally, Defendants supplement their argument on three of Plaintiffs enumerated claims:

FDCPA:  Defendants clarify their position that U.S. Bank, as assignee of the Deed of Trust, is not collecting payments from Plaintiff.  *Id.* at 9.  Moreover, Defendants state that Chase is collecting payments from Plaintiffs as a servicer pursuant to the terms of the Note and Deed of Trust, and thus is not a creditor.  *Id.* (citing *Lal*, 680 F.Supp.2d at 1224).

RESPA:  Defendants raise three objections to Plaintiffs' RESPA claim.  First, Defendants argue that the purported QWR was overbroad because it included a request for "a 'complete life of the loan transactional history,' 'transaction codes for software platform servicers,' 'code definitions,' 'screen shots of the system accounts,' etc."  *Id.*  Second, Defendants argue that Plaintiffs only established that they believed their account was in error as it related to the transfer, not the servicing of the loan.  *Id.*  Third, Defendants restate their argument that Plaintiffs have not adequately pled actual damages.  *Id.* (citing *Derusseau*, 2011 WL 5975821, at *4).

16

United States District Court
Northern District of California

1     <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>: Defendants address Plaintiffs

2 claim for breach of the implied covenant of good faith and fair dealing by pointing out that no such

3 claim appeared in the Complaint. *Id.* at 10.

4 **IV.    ANALYSIS**

5     **A.    Legal Standard**

6         **1.    Rule 12(b)(6)**

7     A complaint may be dismissed for failure to state a claim for which relief can be granted

8 under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose

9 of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star*

10 *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the

11 pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

12 pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

13 claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

14     In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

15 "all allegations of material fact as true and construe[s] them in the lights most favorable to the non-

16 moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may

17 be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

18 theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must

19 "contain either direct or inferential allegations respecting all the material elements necessary to

20 sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562

21 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A

22 pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

23 action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

24 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

25 enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

26     The factual allegations must be definite enough to "raise a right to relief above the

27 speculative level." *Twombly*, 550 U.S. at 555. However, a complaint does not need detailed factual

28

allegations to survive dismissal.  *Id*.  Rather, a complaint need only include enough facts to state a

claim that is "plausible on its face."  *Id*. at 570.  That is, the pleadings must contain factual

allegations "plausibly suggesting (not merely consistent with)" a right to relief.  *Id*. at 545 (noting

that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings

demonstrate that "the pleader is entitled to relief").

### 2.    Granting Leave to Amend

If a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant

leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130

(9th Cir. 2000) (citations and internal quotation marks omitted).

### B.    The Interests Held by Chase, U.S. Bank, and CRC in Plaintiffs' Mortgage

Several of Plaintiffs' claims rest on their assertions that Defendants took several actions

absent any authority.  The assertion that Defendants lacked any authority is controverted by several

documents properly considered in the context of a motion to dismiss.  Defendants' powers and duties

are discussed below.

### 1.    Background Law Regarding Standing to Challenge Securitization

"Ninth Circuit district courts have come to different conclusions when analyzing plaintiff's

right to challenge the securitization process as Plaintiff[s] [have] here."  *Johnson v. HSBC Bank*

*USA, N.A.*, 2012 WL 928433, at *2 (S.D. Cal. March 19, 2012) (citing *Schafer v. CitiMortgage, Inc.*,

2011 WL 2437267 (C.D. Cal. June 15, 2011) (denying defendants' motion to dismiss declaratory

relief claim, which was based on alleged improper transfer due to alleged fraud in signing of

documents); *Vogan*, 2011 WL 5826016, at *7 (allowing § 17200 claim when plaintiffs alleged that

assignment was executed after the closing date of securities pool, "giving rise to a plausible

inference that at least some part of the recorded assignment was fabricated"); *Armeni*, 2012 WL

603242, *2; *Junger v. Bank of America, N.A.*, 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012)).

The majority position is that plaintiffs lack standing to challenge noncompliance with a PSA in

United States District Court
Northern District of California

United States District Court
Northern District of California

1   securitization unless they are parties to the PSA or third party beneficiaries of the PSA. *See Aniel v.*

2   *GMAC Mortg., LLC*, 2012 WL 5389706, at \*4 (N.D. Cal. Nov. 2, 2012) (collecting cases);

3   *Almutarreb v. Bank of New York Trust Co., N.A.*, 2012 WL 4371410, at \*2 (N.D. Cal. Sept. 24,

4   2012) (disagreeing with *Vogan* and *Johnson* in finding that, because Plaintiffs were neither parties

5   nor third party beneficiaries to the PSA, they lacked standing to challenge whether the loan transfer

6   occurred outside the temporal bounds described in the PSA) (citing cases). This Court follows the

7   majority approach.

8                **2.     Application of Law to Facts**

9                     **a.     CRC**

10       CRC is named as the trustee in the DOT. Complaint, Ex. B ¶ (D). In that instrument,

11   Plaintiffs conveyed their property to CRC, in trust, and granted CRC a power of sale. *Id*. at Ex. B at

12   3. As such, CRC had power to foreclose on Plaintiffs' mortgage loan in the event of default. Any

13   subsequent transactions whereby WaMu securitized its own interest under the DOT do not impact

14   CRC's authority under that document.

15                     **b.     Chase**

16       Chase is the servicer of Plaintiffs' home mortgage loan. As servicer, Chase is entitled to

17   collect payments from Plaintiffs and initiate foreclosure.

18       Plaintiffs took out their home mortgage loan in December 2006. *Id*. at Exs. A and B. WaMu

19   was the lender recorded in the DOT accompanying the mortgage. *Id*. at Ex. B ¶ (C). As lender,

20   WaMu was entitled it to collect monthly payments on the loan. *Id*. at Exs. A ¶ (1) and B ¶ (1).

21   WaMu reserved a power of sale upon after default and notice. *Id*. at Ex. B ¶ (22). Moreover, WaMu

22   reserved the right to transfer its interest in the mortgage one or more times without prior notice to

23   Plaintiffs. *Id*. at Ex. B ¶ (20).

24       For the purposes of this Motion, the Court takes as true Plaintiffs' allegation that WaMu did

25   not include their mortgage loan in the 2006-AR19 Trust.[5] This means that WaMu retained its

---

[5] If the loan was successfully securitized, the conclusion would be the same: Chase succeeded to WaMu's servicing rights. Exhibit D to the PSA, which contains a list of the mortgages included in the 2006-AR19 Trust, is omitted from the SEC filing and from Defendants' RJN. If WaMu had securitized its loan in the 2006-AR19 Trust, it still remained the loan servicer with the power to collect payments and foreclose upon default. RJN, Ex. 6 at 80 and ¶¶ 3.01, 3.09.

United States District Court
Northern District of California

1  interest as lender at the time of the P&A Agreement.[6]  Pursuant to the P&A Agreement, Chase took

2  title to all of WaMu's assets.  RJN, Ex. 5 at ¶ 3.1.  Although Chase was allowed to exclude certain

3  assets, the P&A Agreement provides that Chase "specifically purchase[d] all mortgage servicing

4  rights and obligations of [WaMu]."[7]  *Id*.  Thus, Chase took WaMu's interest in September 2008, and

5  was entitled to collect payments and initiate foreclosure.  Whether or not Chase thereafter securitized

6  the loan in the 2006-AR19 Trust, it retained those powers because it also took WaMu's interest as

7  servicer on that trust.  *Id*. at Ex. 6 at 80 and ¶¶ 3.01, 3.09.

### c.     U.S. Bank, Bank of America, and LaSalle

9       U.S. Bank is the trustee of the 2006-AR19 Trust.  LaSalle was the original trustee.  Bank of

10  America succeeded to LaSalle's interest by merger.  U.S. Bank succeeded to Bank of America's

11  interest as trustee in an unspecified, but undisputed, transaction.  Even assuming Plaintiffs' mortgage

12  loan was not initially included in the 2006-AR19 Trust, the trust obtained the beneficial interest

13  under the DOT pursuant to the 2009 Assignment.  Complaint, Ex. D.  Plaintiffs raise a number of

14  procedural objections to the 2009 Assignment.  But Plaintiffs do not have standing to press those

15  objections because they are neither parties to nor third party beneficiaries of the 2006-AR19 Trust.

16  Moreover, the duties of the trustee of the 2006-AR19 Trust, as described in the PSA, do not include

17  collecting payments on individual mortgage loans or initiating foreclosure on individual mortgage

18  loans.  RJN Ex. 6 ¶¶ 8.01-8.18.  Chase obtained those servicing rights pursuant to the P&A

19  Agreement.  Accordingly, Plaintiffs' allegations regarding the successful – or unsuccessful –

20  assignment of the beneficial interest in the loan to the trust do not change the right of Chase to

21  collect loan payments and to foreclose on the DOT.

---

22  [6] The Court cannot construe the Complaint as plausibly alleging otherwise.  In one portion of their Complaint, Plaintiffs

23  allege that WaMu "attempted" to securitize and sell their loan to another entity.  Complaint, ¶ 32.  In the portion of their complaint devoted to their restitution claim, Plaintiffs allege for the first and only time that WaMu sold their interest to an

24  unidentified party.  *Id*. at ¶ 88.  This conclusory statement is not plausible.  It is contradicted by other allegations of the Complaint and itself contains no facts.  Despite the paper trail regarding the interests in their loan, Plaintiffs state that the

25  loan was sold – contradicting judicially noticed documents.  Plaintiffs provide no factual basis for this conclusion, such as attempts by a third party to collect mortgage payments or otherwise assert its interest during the four or more years Chase

26  was acting as servicer.  If Plaintiffs have any facts to plead regarding the assignment of their mortgage to another unnamed entity, they may put them in their amended complaint.

27  [7] At the hearing on the Motion, Plaintiffs argued that the P&A Agreement did not transfer their mortgage loan because it was not identified in that document.  But the P&A Agreement expressly refers to all of WaMu's servicing rights, which

28  included its servicing rights over Plaintiffs' loan.

**C.** **Wrongful Foreclosure**

Plaintiffs argue that Defendants wrongfully instituted foreclosure proceedings without a sufficient interest in their mortgage loan. But CRC, not Defendants, initiated foreclosure proceedings. Moreover, CRC had authority to do so. As a result, their wrongful foreclosure claim fails.

**1.** **Background Law**

**a.** **Standing to Challenge Wrongful Foreclosure**

In California, when a debtor is in default of a home mortgage loan, and a foreclosure has taken place, the debtor must allege credible tender of the amount of the secured debt to maintain a cause of action for wrongful disclosure. *See U.S. Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal.App.3d 1214, 1222, 212 Cal.Rptr. 232 (1985); *Chan Tang*, 2012 WL 960373, at *4; *Alicea*, 2009 WL 2136969, at *3. District courts have split as to whether the tender rule applies prior to a foreclosure sale. *See Chan Tang*, 2012 WL 960373, at *4-*5; *Alicea*, 2009 WL 2136969, at *3. Moreover, tender may not be required when Plaintiffs challenge the validity of their debt. *See Vogan*, 2011 WL 5826016, at *7-*8.

**b.** **Nonjudicial Foreclosure Procedure**

California Civil Code Section 2924 controls the nonjudicial foreclosure process in California including what a notice of default must contain and from whom it may issue. Section 2924(a)(1) provides that foreclosure proceedings are commenced when a "trustee, mortgagee, or beneficiary, or any of their authorized agents" files a notice of default and election to sell. *See Moeller v. Lien*, 25 Cal.App.4th 822, 830, 30 Cal.Rptr.2d 777 (1994); Cal. Civ. Code § 2924(a)(1). The notice of default must include:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property[;] (B) [a] statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred[;] (C) [a] statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that

21

is in default[; and] (D) [i]f the default is curable pursuant to Section 2924, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

Cal. Civ. Code § 2924(a)(1).  There is no requirement for the production of an original promissory note prior to initiation of nonjudicial foreclosure.  *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009).  If the deed of trust contains an express provision granting a power of sale, the beneficiary may pursue nonjudicial foreclosure.  *Id.* at 1188.  Securitization does not affect the trustee's rights, under the deed of trust, to initiate foreclosure proceedings.  *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009).

### 2.    Application of Law to Facts

Plaintiffs' wrongful foreclosure claim is based on their allegation that neither Defendants nor CRC have any interest in Plaintiffs' mortgage loan entitling them to collect payments or initiate foreclosure.  CRC, as the trustee on the original DOT, was authorized to initiate foreclosure.  Complaint, Ex. B.  CRC initiated foreclosure.  RJN, Exs. 7 and 8; Complaint, Ex. C.  Moreover, as described above, Chase has the right as servicer to initiate foreclosure.  In any event, there is certainly no claim against U.S. Bank of its predecessor Bank of America in the absence of a plausible allegation of their participation in the foreclosure.  Plaintiffs claim for wrongful foreclosure is dismissed with leave to amend.

### C.    Negligence

Plaintiffs' negligence claim fails because Plaintiffs failed to allege facts that would give rise to a legal duty owed by Defendants.  Moreover, in light of the judicially noticed documents, Plaintiffs have not plausibly alleged that Defendants took any action without legal authority.

### 1.    Background Law

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark*, 231 Cal.App.3d at 1095-96, 283 Cal.Rptr. 53.  Determining whether a financial institution exceeded its role as money lender under California law involves "the balancing of various factors, among which are (1) the extent to which the

1   transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree

2   of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the

3   defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct,

4   and (6) the policy of preventing future harm." *Id*. at 1098.

### 2. Application of Law to Facts

#### a. Chase

7        Plaintiffs alleges that Chase, acting as an agent for Bank of America or U.S. Bank, collected

8   payments to which it was not entitled. Complaint, ¶¶ 80-81. This allegation relies on their prior

9   allegation that Chase has no interest in their mortgage loan. Chase was entitled to collect payments

10  either as a lender on the initial mortgage or as a servicer pursuant to the PSA. *Id*. at Ex. A and B;

11  RJN, Ex. 6. Moreover, to the extent that Plaintiffs claim Chase failed to accurately account for their

12  mortgage payments, Plaintiffs have not alleged that Chase acted in a way that exceeded the scope of

13  its conventional role as a mere lender of money. Thus, Chase did not owe Plaintiffs a duty of care.

14  For those reasons, Plaintiffs negligence claim against Chase is dismissed with leave to amend.

#### b. U.S. Bank and Bank of America

16       In the Complaint, Plaintiffs allege that Chase was acting as an agent of Bank of America,

17  which was the purported beneficiary of the Note and DOT. *Id*. at ¶¶ 80-81. In the Motion,

18  Defendants state that Bank of America was wrongfully sued, because U.S. Bank has succeeded to

19  Bank of America's role as trustee of the 2006-AR19 Trust. Notice of Motion to Dismiss, 1. In their

20  Opposition, Plaintiffs identify U.S. Bank as a defendant instead of Bank of America. Opposition, 5.

21  Plaintiffs do not allege any actions undertaken by Bank of America or U.S. Bank as it relates to their

22  negligence cause of action. To the extent that liability is premised on the actions of Chase, as

23  described above, Chase had no duty of care. Thus, Plaintiffs have not pled any basis for Bank of

24  America or U.S. Bank to be liable under a negligence theory. Their negligence claim against these

25  Defendants is dismissed with leave to amend.

26  //

27  //

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**D.    Quasi-Contract**

Plaintiffs "quasi-contract" claim is properly couched as a restitution claim.  Their restitution claim fails because, contrary to their assertions, Chase was authorized to collect monthly payments and because Plaintiffs have not alleged that U.S. Bank or Bank of America independently collected any payments from them.

### 1.    Background Law

California recognizes an independent cause of action for restitution.  *See McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928, 964 (N.D. Cal. 2012).  To state a claim for restitution, a plaintiff "must plead 'receipt of a benefit and the unjust retention of the benefit at the expense of another.'"  *Walters v. Fidelity Mortg. of Cal.* 2010 WL 1493131, at *12 (E.D. Cal. Apr. 14, 2010) (quoting *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000)).  Plaintiff need not establish bad faith on the part of the defendant.  *McNeary-Calloway*, 863 F.Supp.2d at 964.  In general, this cause of action does not exist where an express binding agreement exists and defines the parties' rights.  *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal.* 94 Cal.App.4th 151, 172, 114 Cal.Rpt.2d 109 (2001).

### 2.    Application of Law to Facts

#### a.    Chase

Plaintiffs claim against Chase is predicated on the allegation that Chase did not have authority to collect any payments from Plaintiffs.  As discussed above, Chase had authority to collect monthly payments from Plaintiffs.  Plaintiffs restitution claim against Chase is therefore dismissed with leave to amend.

#### b.    U.S. Bank and Bank of America

Plaintiffs allege in their Complaint that Bank of America "and/or" Chase demanded monthly mortgage payments.  Complaint, ¶ 86.  Plaintiffs further allege that Bank of America "and/or" Chase knowingly accepted payments to which they were not entitled.  *Id*. at ¶ 87.  In their Opposition, Plaintiffs clarify their belief that Chase collected payments as an agent of Bank of America or U.S. Bank.  Opposition, 20.  However, the "agent," Chase, was authorized to collect payments.

24

Moreover, Plaintiffs have not clearly alleged that Bank of America or U.S. Bank, as opposed to Chase, collected payments from them.  Plaintiffs claim is dismissed with leave to amend.

**E.      RESPA**

Plaintiffs RESPA claim against Chase fails because they have failed to allege pecuniary damages caused by Chase's failure to respond to their QWR, a pattern of noncompliance on the part of Chase, or that Chase furnished negative information to credit reporting agencies during the 60 day safe harbor after receiving the QWR.  It is unclear whether Plaintiffs also claim that Bank of America or U.S. Bank violated RESPA.  To the extent that Plaintiffs do so, their claim fails because they do not allege that they sent a QWR to Bank of America or U.S. Bank and neither entity is listed on the purported QWR attached to their Complaint.  Complaint, Ex. E.

**1.      Background Law**

Section 2605 of RESPA governs QWRs as follows:

(A)  In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B)  Qualified written request

…a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(A)-(B) (emphasis added).

Within sixty days of receipt of a QWR, the servicer is required to issue a response containing information mandated by statute.  *See* 12 U.S.C. § 2605(e)(2).  Additionally, RESPA places a

25

moratorium on the servicer's ability to contact consumer reporting agencies following the receipt of a QWR, as the statute states:

> (3) Protection of credit rating
>
> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency.

12 U.S.C. § 2605(e)(3).

"Not all requests that relate to the loan are related to the servicing of the loan." *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *14 (N.D. Cal. Feb. 1, 2012) (quoting *Williams v. Wells Fargo*, 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010)). "A loan servicer only has a duty to respond if the information request is related to loan servicing." *Id*. (quoting *Copeland v. Lehman Bros. Bank, FSB*, 2010 WL 2817173, at *3 (S.D. Cal. July 15, 2010)).

"Alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also prove that the breach resulted in actual damages or was part of a pattern or practice of noncompliance." *Id*. (citing 12 U.S.C. § 2605(f)(1)(A) ("[w]hoever fails to comply with this section shall be liable to the borrower … [for] any actual damages to the borrower as a result of the failure; and … any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.")).

### 2.      Application of Law to Facts

Plaintiffs argue that Chase failed to respond to their purported QWR and furnished adverse information to credit reporting agencies.

#### a.      Failure to Respond

##### i.      The QWR

The Court rejects Defendants' assertion that Exhibit E did not constitute a QWR. Because Section 2605(e)(1)(B) is written in the disjunctive, it does not require that a QWR contain "a

United States District Court
Northern District of California

1    statement of reasons for the belief of the borrower, to the extent applicable, that the account was in

2    error." *Lawther*, 2012 WL 298110, at *15.  A QWR is valid if it "provides sufficient detail to the

3    servicer regarding other information sought by the borrower." *Id*.  In their letter, attached to their

4    complaint as Exhibit E, Plaintiffs made a number of document requests pertaining directly to the

5    servicing of their loan that provided sufficient detail to the servicer regarding the information sought,

6    including the calculation of interest, the assessment of late fees, and the crediting of payments made

7    on the loan as to "principal, interest, late fees, etc." *See id*.; *see also Garcia v. Wachovia Mortg.*

8    *Corp.*, 676 F.Supp.2d 895, 909 (C.D. Cal. 2009).  That Plaintiffs made a number of broader requests,

9    as well as allegations and document requests that were not related to servicing, does not change this

10   outcome.  *See Lawther*, 2012 WL 298110, at *15; *see also Michel v. Deutsche Bank Trust Co.*, 2012

11   WL 4363720, at *10 (E.D. Cal. Sept. 20, 2012) (the identity of the holder of the subject loan does

12   not relate to loan servicing, a QWR must relate to the servicing of the loan and not its validity);

13   *Manzano v. Metlife Bank N.A.*, 2011 WL 3420822, *2 n.3 (E.D. Cal. Aug. 3, 2011) (finding that a

14   borrower's letter can constitute a QWR even though it includes allegedly "extraneous" and "overly

15   burdensome" requests).  Defendants made no response to Plaintiffs' QWR.

                          **ii.      Damages**

16

17            Defendants contend that Plaintiffs are unable to show any pecuniary damages caused by their

18   failure to respond to the QWR.  Plaintiffs allege damages including over calculation and

19   overpayment of interest on their loan, the costs of repairing their credit, the reduction of their credit

20   limits, and costs associated with removing the cloud on their property title.  Plaintiffs make no

21   allegations tying these damages to Chase's failure to respond to that portion of Exhibit E, which was

22   sent on August 30, 2011 in response to the foreclosure proceedings initiated by CRC, pertaining to

23   servicing on their loan.  Moreover, Plaintiffs are also unable to collect statutory damages because

24   they have not alleged that the violation is part of a "pattern or practice of noncompliance."  12

25   U.S.C. §2605(f)(1)(A).  Plaintiffs will be given leave to amend.

26   //

27   //

28

                                       27

United States District Court
Northern District of California

**b.      Providing Information to Credit Reporting Agencies**

Plaintiffs further allege that Chase violated RESPA by furnishing adverse information to credit reporting agencies.  Plaintiffs do not allege that any report was made during the 60-day post-QWR statutory prohibition on furnishing such information.  12 U.S.C. §2605(e)(3).  Thus, Plaintiffs have failed to allege a violation of RESPA on this basis.  Plaintiffs' RESPA cause of action is dismissed with leave to amend.

**F.      FDCPA**

Plaintiffs allege that Defendants violated the FDCPA by attempting to collect on a debt in which they have no interest.  As discussed above, Plaintiffs have not plausibly alleged that Chase was not their true loan servicer.   Moreover, Plaintiffs did not allege in their Complaint that any of Defendants was a "debt collector" for the purposes of the FDCPA.

**1.      Background Law**

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To accomplish this goal, the FDCPA prohibits debt collectors from "using any false, deceptive or misleading representation or means in connection with the collection of a debt."  15 U.S.C. § 1692e.  A  It is well-established that the FDCPA applies to "debt collectors" as the term is defined under 15 U.S.C. § 1692a, not creditors.  *Schlegel v. Wells Fargo Bank, N.A.*, 799 F.Supp.2d 1100, 1103 (N.D. Cal. 2011).  A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or directly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  It is also well-established that a loan servicer is not a debt collector for those purposes if it acquired the loan before the borrower was in default.  *See Schlegel*, 799 F.Supp.2d at 1103; *Lal*, 680 F.Supp.2d at 1224 (the FDCPA's definition of debt collector does not include creditors, a mortgage servicing company, or an assignee of the debt).

28

1    Where the FDCPA applies, courts apply the "least sophisticated debtor standard."  *Depuy v.*

2  *Weltman, Wienberg & Reis Co.*, 442 F.Supp.2d 822, 824 (N.D. Cal. 2006) (citing *Wade v. Reg'l*

3  *Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).  "Under that standard, if the court finds the least

4  sophisticated debtor 'would likely be misled' by a debt collection letter, the court 'must hold the

5  [defendant] has violated the [FDCPA].'"  *Id.* (quoting *Swanson v. Southern Oregon Credit Serv.*,

6  869 F.2d 1222, 1225 (9th Cir. 1988)).

7    **2.    Application of Law to Facts**

8      **a.    Chase**

9    Chase is not a debt collector for the purposes of the FDCPA because, as discussed above, it

10  obtained servicing rights prior to Plaintiffs' default.  Thus, Plaintiffs' FDCPA claim against Chase is

11  dismissed with leave to amend.

12      **b.    U.S. Bank and Bank of America**

13    In their Complaint, Plaintiffs' allege that Bank of America falsely asserted that their debt was

14  due and owing to Bank of America.  However, Plaintiffs did not allege that Bank of America was a

15  debt collector for the purposes of the FDCPA.  Nor did they allege any facts to give rise to the

16  inference that Bank of America was a debt collector under the FDCPA.  After Defendants argued

17  that Bank of America was wrongly sued, Plaintiffs identified U.S. Bank, and not Bank of America,

18  as a defendant in this action.  Opposition, 5.  In their opposition, for the first time, Plaintiffs argue

19  that U.S. Bank is a debt collector for the purposes of the FDCPA.  *Id.* at 20.

20    Plaintiffs Complaint does not state a claim against either Bank of America or U.S. Bank

21  under the FDCPA because they did not allege that either entity was a debt collector as defined in the

22  statute.  Thus, Plaintiffs' FDCPA claim is dismissed.  Plaintiffs are given leave to amend.  If

23  Plaintiffs choose to amend their Complaint, they should use facts within their knowledge to clearly

24  specify which bank or banks, acting as a debt collector, attempted to collect payments from them.  If

25  the collection efforts were made by Chase, as discussed above, the FDCPA claim fails because

26  Chase is not a debt collector.

27  //

28

United States District Court
Northern District of California

**G.     UCL**

Plaintiffs have not pled an economic injury caused by Defendants alleged unfair business practices.  Therefore, they lack standing to assert a UCL claim.[8]

**1.     Background Law**

**a.     Standing**

A claim for unfair competition under the UCL may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Therefore, to establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice … that is the gravamen of the claim."  *Lawther*, 2012 WL 298110, at *23 (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 337, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)).

**b.     UCL Violation**

The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To establish a violation of the UCL, a plaintiff may establish a violation under any one of these prongs.  To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.  *People v. McKale*, 25 Cal. 3d 626, 635 (1979).

"'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal. App. 4th 608, 618 (1996).

Finally, while there is disagreement among California courts regarding the definition of "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo* explains:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando*

---

[8] Contrary to Defendants' assertion, Plaintiffs' have pled an underlying violation of California Penal Code Section 532f(a)(4), among other allegedly unfair and misleading business practices.  Complaint, ¶ 104.  Because Plaintiffs have failed to allege standing, the Court need not reach the merits of those claims.

*Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.

The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).
. . .

A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595,101 Cal.Rptr.3d 697)).
. . .

The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006)).

2011 WL 302803, at *16 (E.D. Cal. Jan. 27, 2011).

### 2.    Application of Law to Facts

#### a.    Standing

In their Complaint, Plaintiffs allege only that "a cloud has been placed upon title to Plaintiffs' Property" as a result of Defendants' unfair business practices. Complaint, ¶ 114. In their Opposition, Plaintiffs allege damage to their credit, inability to refinance or sell their home, and that title to their property has been rendered unmarketable. These allegations are premised on the Plaintiffs' assertion that Defendants have no interest in their mortgage loan and were not entitled to

collect payments or foreclose on the loan.  As discussed above, Chase properly collected payments on their loan and CRC had authority to initiate foreclosure.  Thus, Plaintiffs have not sufficiently pled that title to their home was clouded by Defendants alleged unfair business practices, as opposed to their own failure to make payments on their mortgage.  Because Plaintiffs have not established standing, their UCL claim is dismissed with leave to amend.

### b.    UCL Violation

#### i.    Unlawful Business Practices

Plaintiffs allege that Defendants acted in violation of the RESPA, California Penal Code Section 532f(a)(4), California Civil Code Section 1095, and "the Security First Rule."  As discussed above, Plaintiffs have not pled a violation of the RESPA.  For the reasons discussed below, Plaintiffs have not pled a violation of any of the other three statutes.  Thus, Plaintiffs have not made out a claim under the UCL predicated on unlawful business practices.

#### AA.    California Penal Code Section 532f(a)(4)

California Penal Code Section 532f(a)(4) provides that "[a] person commits mortgage fraud if, with the intent to defraud, the person … files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."  Cal. Pen. Code § 532f(a)(4).  Plaintiffs contend that Defendants violated this provision by executing the 2009 Assignment after the closing date in the PSA and filing it with the county recorder.  Plaintiffs rely on *Vogan*, where the Court, in an alternative holding, stated that the execution of a securitization assignment to a trust after the closing date provided by the documents governing that trust gave rise to a plausible inference that some part of the assignment was fabricated.  *Vogan*, 2011 WL 5826016 at *7.  The *Vogan* court reasoned that this conduct constituted a violation of section 532f(a)(4) sufficient to support a UCL claim.  *Id*.

*Vogan* parted from the majority of Ninth Circuit district courts in granting the plaintiffs standing.  As discussed above, Plaintiffs do not have standing to challenge the 2009 Assignment because they were not parties to, or third party beneficiaries of, the PSA.  *See Almutarreb*, 2012 WL

United States District Court
Northern District of California

4371410 at *2.  *Vogan* does not explain the basis for its departure from the majority rule.  *See id.* at *2 n.1.  Therefore, Plaintiffs cannot premise their UCL claim on their challenge to the 2009 Assignment.  *See id.* at *2 (dismissing Plaintiff's UCL claim because it was based on a "PSA violation theory").

### BB.    California Civil Code Section 1095

California Civil Code Section 1095 states, "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact."  Cal. Civ. Code § 1095.  Although it is not clear from the Complaint, this appears to relate to Brignac's authority to execute the 2009 Assignment.  Even assuming Plaintiffs could challenge the 2009 Assignment and this code section applies, the 2009 Assignment identifies each party to the transaction.

### CC.    The Security First Rule

Although Plaintiffs' allege a violation of the Security First Rule, they make no attempt to define the rule or explain what alleged conduct violated the rule.  Plaintiffs will be given an opportunity to amend their Complaint to do just that.

### ii.    Fraudulent or Unfair Conduct

Plaintiffs also state that Defendants conduct was both fraudulent and unfair.  In making this claim, Plaintiffs either rely on the contended inadequacy of the 2009 Assignment or their contentions attacking the validity of their debt.  As discussed above, these contentions fail.  First, Plaintiffs lack standing to challenge the 2009 Assignment.  Second, Chase, as servicer, could collect payments on Plaintiffs' mortgage loan and foreclose in the event of default.  CRC, as trustee under the DOT, had authority to foreclose in the event of default.  Plaintiffs have not alleged conduct taken directly against them by U.S. Bank or Bank of America.  Thus, Plaintiffs have not made out a UCL violation.

### H.    Accounting

Plaintiffs' accounting claim fails because, as pleaded, the alleged balance due to Plaintiffs can be ascertained without an accounting.

//

### 1.      Background Law

Accounting is an independent cause of action in equity.  *Penney v. Wells Fargo Bank, NA*, 2012 WL 2071705, at \*13 (C.D. Cal. June 8, 2012) (citing *Teselle*, 173 Cal.App.4th at 180, 2 Cal.Rptr.3d 696).  A cause of action seeking an accounting may be maintained when (1) a relationship exists between a plaintiff and defendant that requires an accounting, and (2) some balance is due to the plaintiff that can only be ascertained by an accounting.  *Teselle*, 173 Cal.App.4th at 179, 2 Cal.Rptr.3d 696 (citing *Brea v. McGlashan*, 3 Cal.App.2d 454, 460, 39 P.2d 877 (1934)); *Mendoza v. Countrywide Home Loans, Inc.*, 2009 WL 4706350, at \*8 (N.D. Cal. Dec. 3, 2009).  No fiduciary relationship is required.  *Teselle*, 173 Cal.App.4th at 179, 2 Cal.Rptr.3d 696.  But "[a]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation."  *Penney*, 2012 WL 2071705, at \*13 (citing *Teselle*, 173 Cal.App.4th at 179, 2 Cal.Rptr.3d 696).

### 2.      Application of Law to Facts

Plaintiffs allege that they made four years of payments on their mortgage to "[Bank of America] and/or [Chase]."  Complaint, ¶ 118.  They further allege that none of this money was owed to either bank, so all money paid should be returned in full.  *Id*.  As discussed above, Chase was entitled to receive payments on Plaintiffs' mortgage loan.  Moreover the total amount of payments made by Plaintiffs can be ascertained without resort to accounting.  *See Penney*, 2012 WL 2071705, at \*13.  Therefore, Plaintiffs claim for an accounting is dismissed with leave to amend.

### I.      Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

Plaintiffs raise these causes of action for the first time in their Opposition.  As such, they are dismissed with leave to amend.  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing the pleader is entitled to relief").

### J.      Declaratory Judgment

Declaratory relief is an equitable remedy which fails to the extent that the underlying claims fail.  *See Glue-Fold, Inc. v. Slaughterback Corp.*, 82 Cal.App.4th 1018, 1023 n.3, 98 Cal.Rptr.2d

United States District Court
Northern District of California

34

661 (2000).  Because Plaintiffs' underlying claims fail, so too does their claim for declaratory

judgment.  Plaintiffs' cause of action for declaratory relief is dismissed with leave to amend.

**V.     CONCLUSION**

Defendants' Motion to Dismiss is GRANTED.  Plaintiffs will be given an opportunity to

amend their Complaint.  Plaintiffs' amended Complaint shall be filed within thirty (30) days of this

Order.


IT IS SO ORDERED.


Dated: December 14, 2012


_____

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

35